IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alfonso Bobbie Rhone,<br><br>    Petitioner,<br><br>vs.<br><br>Dennis Smith,<br><br>    Respondent. | No. CV-12-718-PHX-GMS (BSB)<br><br>**REPORT AND RECOMMENDATION** |

Petitioner Alfonso Bobbie Rhone (Petitioner) has filed an Amended Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241.[1] (Doc. 16.) Petitioner is an inmate at the Federal Correctional Institution (FCI) in Phoenix, Arizona. The Federal Bureau of Prisons (BOP) inadvertently released Petitioner on October 27, 2010. After BOP discovered its error, Petitioner was arrested and remanded to BOP custody. Petitioner now challenges his incarceration following his inadvertent release. He also argues that he should be released because of errors in the calculation and execution of his federal and state sentences. Respondent has filed an answer opposing the Petition (Doc. 23), and Petitioner has filed a reply. (Docs. 24, 25). The Amended Petition is fully briefed and should be denied for the reasons set forth below.

---

[1] Petitioner initially filed a petition for writ of habeas corpus in the Western District of Louisiana. Because Petitioner challenges the execution of his sentence and is incarcerated at the FCI Phoenix, Arizona, the Western District of Louisiana transferred the petition to this Court on April 4, 2012. (Docs. 12, 13.) This Court dismissed the petition with leave to amend, and Petitioner filed the pending Amended Petition on May 24, 2012. (Docs. 15, 16.)

## I. Federal and State Convictions, Sentences, and Release From Federal Custody

Petitioner has several federal and state court convictions from California and Louisiana, which the Court sets forth below to provide context for Petitioner's pending claims.

### A. Federal Sentence and Supervised Release Violation Petition in California

On May 29, 1990, Petitioner was sentenced in the United States District Court for the Central District of California, case number CR-89-479-R, to sixteen months' imprisonment for possession of stolen properly in interstate shipment, to be followed by three years of supervised release. (Respondent's Ex. 2, attachment 1; Doc. 23-5 at 10-12.)[2] On April 2, 1991, Petitioner was released pursuant to a Good Conduct Time Release and began serving the three-year supervised release term. (Respondent's Ex. 2, attachment 2; doc. 23-5 at 13-15.)

On December 6, 1991, the United States Probation Office, Central District of California, filed a supervised release violation petition based on Petitioner's alleged violation of his release conditions. (Respondent's Ex. 2, attachment 3; Doc. 23-5 at 16-17.) On December 10, 1991, the United States District Court, Central District of California, issued a warrant for Petitioner's arrest based on that petition. (Respondent's Ex. 2, attachment 4; Doc. 23-5 at 19.) Petitioner was not arrested on that warrant for several years due to intervening charges, convictions, and sentences.

### B. State and Federal Charges and Convictions in Louisiana

#### 1. State Charges

On January 23, 1992, Ouachita Parish Sheriff's Officers arrested Petitioner in Ouachita Parish, Louisiana on state charges of aggravated kidnaping, aggravated assault, and simple battery. (Doc. 23-5 at 25.) Pursuant to a search warrant, Sheriff's Officers searched Petitioner's residence and, based on items discovered during that search, the State charged Petitioner with one count of possession of cocaine and two counts of possession of stolen things. (Doc. 23-5 at 26.) The charges for aggravated assault, simple battery, and illegal possession of stolen things

---

[2] Citations to "Respondent's Ex." are to exhibits attached to Respondent's Response to Petition for Writ of Habeas Corpus. (Doc. 23.)

were later dismissed, and Petitioner remained in state custody pending trial on the remaining counts in Docket No. 92F0231. (Doc. 23-5 at 30.)

### 2. Federal Charges and Convictions

While Petitioner was awaiting trial on the charges in Louisiana state court, on January 19, 1993, the United States filed a two-count Bill of Information in the United States District Court, Western District of Louisiana, No. CR-93-3009, charging Petitioner as a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and making a false written statement in connection with acquiring a firearm, in violation of 18 U.S.C. § 922(a)(6). (Respondent's Ex. 2, attachments 4 and 5; Doc. 23-5 at 37-42.)

On January 25, 1993, while Petitioner was in the custody of the State of Louisiana, the Western District of Louisiana issue a writ of habeas corpus *ad prosequendum* for Petitioner's "appearance and guilty plea." (Doc. 23-5 at 19, 37.) Pursuant to the writ, on January 29, 1993, Petitioner was transferred to federal custody. (*Id*. at 44.) On February 2, 1993, Petitioner pled guilty to both counts and, on April 28, 1993, the United States District Court for the Western District of Louisiana sentenced him to forty-six months' imprisonment on each count of conviction to run concurrently. (Respondent's Ex. 2, attachments 5 and 7, doc. 23-5 at 38-47.) The judgment was silent regarding any relationship between the federal sentence and any sentence that the Louisiana state court might impose on the pending state charges in Docket No. 92F0231. (Doc. 23-5 at 47-48.)

### 3. State Convictions and Sentences

On April 30, 1993, Petitioner was returned to the custody of Louisiana state authorities. (Respondent's Ex. 2, attachment 6; Doc. 23-5 at 44.) Petitioner was subsequently convicted of the state charges of aggravated kidnaping and possession of cocaine in Docket No. 92F0231. On November 16, 1993, the state court sentenced Petitioner to thirty-three years' imprisonment and committed him to the Louisiana Department of Corrections to serve that sentence. (Respondent's Ex. 2, attachments 8 and 9; Doc. 23-5 at 69.)

### 4. Request for Credit for Federal Sentence

On May 27, 2008, while serving his state court sentence in Louisiana, Petitioner filed a letter requesting that the BOP consider a retroactive designation allowing him to receive credit on his federal sentence while serving his state sentence. (Respondent's Ex. 2, attachment 11.) The BOP conveyed that request to the sentencing judge in the federal case (Doc. 23-5 at 70-72), and the judge responded that he intended for Petitioner's federal sentence to run consecutively to his state sentence. (Respondent's Ex. 2, attachment 13; doc. 23-5 at 72.) The BOP denied Petitioner's request for a retroactive designation. (Doc. 23-5 at 75-76.)

### C. Supervised Release Violation in California

In the meantime, on May 23, 2005, the United States District Court, Central District of California, issued a bench warrant for Petitioner's arrest based on his alleged violation of supervised release in 1991 in case number CR89-479-R. (Respondent's Ex. 2, attachment 10.) After Petitioner was paroled from his Louisiana state sentence and released from the Louisiana Department of Public Safety and Corrections (Louisiana Department of Corrections), he appeared in the Western District of Louisiana for an initial appearance on the petition to revoke supervised release on June 16, 2010. (Doc. 23-5 at 78, 85) Petitioner was detained and subsequently transferred to the Central District of California for a final revocation hearing. (Respondent's Ex. 2, attachment 16.) On August 2, 2010, the Central District of California found that Petitioner had violated his supervised release and sentenced him to four months' imprisonment. (Respondent's Ex. 2, attachment 17.)

The BOP prepared a sentence computation based on August 2, 2010, the date Petitioner's supervised release was revoked. (Respondent's Ex. 2.) The BOP gave Petitioner prior-custody credit for the period from June 16, 2010, the date Petitioner was paroled from his Louisiana state sentence, through August 1, 2010, the day before the Central District of California sentenced Petitioner for the supervised release violation. The BOP calculated Petitioner's release date as October 15, 2010. (Respondent's Ex. 2, attachment 18.)

**D. Release from Federal Custody**

After Petitioner served his sentence on the revocation of supervised release, the BOP mistakenly released him from custody on October 27, 2010.[3] (Doc. 16 at 20; Doc. 23-5 at 99.) BOP then realized that Petitioner had not served his forty-six-month term of imprisonment imposed on April 28, 1993 by the Western District of Louisiana in case number CR-93-30009 for Petitioner's conviction as a felon in possession of a firearm and for making a false written statement in acquiring a firearm. (Respondent's Ex. 2, attachment 19; doc. 23-5 at 101.) On November 2, 2010, the court issued a warrant for Petitioner's arrest. (Respondent's Ex. 2, attachment 23.) United States Marshals arrested Petitioner in the Central District of California on November 15, 2010, and he was remanded to the custody of the BOP to serve his forty-six-month federal sentence. (Respondent's Ex. 2, attachments 19 and 20.)

**II. Analysis**

Petitioner presents the following four grounds for relief: (1) he is entitled to credit against his federal sentence because he was returned to Louisiana state custody and not immediately remanded to the BOP after the United States District Court, Western District of Louisiana sentenced him in 1993; (2) the BOP is estopped from asserting, or has waived, any right to incarcerate him after his inadvertent release; (3) the delay in executing his 1993 federal sentence in Louisiana violates his rights to due process; and (4) his incarceration after his release from federal custody is a breach of BOP's "release agreement." (Doc. 16.) As set forth below, these grounds lack merit and the Petition should be denied.

---

[3] As Petitioner notes in his Reply (Doc. 24 at 6), although his scheduled release date was October 15, 2010, the BOP did not release him until October 27, 2010 because it was awaiting confirmation that Petitioner had been fully released from custody of the State of Louisiana. (Doc. 23-5 at 100.) The BOP noted that Petitioner may be eligible for twelve days of over-served time credit against another federal sentence. (*Id*.) To the extent Petitioner raises a claim regarding receiving credit for those twelve days, this Court lacks jurisdiction to grant credit toward his sentence. Rather, it is the BOP's administrative duty "to compute sentences and apply credit." *United States v. Clayton*, 588 F.2d 1288, 1292 (9th Cir. 1979); *see also Reynolds v. Thomas*, 603 F.3d 1144, 1149 (9th Cir. 2010) (discussing the BOP's authority to calculate a defendant's sentence and to designate a facility for service of that sentence).

- 5 -

### A. Ground One — Credit for Time Spent Serving State Sentence

In Ground One, Petitioner argues that he is entitled to credit on his forty-six-month federal sentence for the period from April 28, 1993, the date on which the Western District of Louisiana imposed that sentence, until June 16, 2010, the date on which the Louisiana Department of Corrections released him from custody. (Doc. 16 at 5-6.) Respondent argues that Petitioner is not entitled to credit against his federal sentence for that period because his federal sentence was not running at that time.[4] (Doc. 23.) In his Reply, Petitioner "concedes as to this issue . . . [a]s binding precedence of law . . . and statutory authority (18 U.S.C. § 3584(a)) [are] controlling." (Doc. 24 at 3.) Although Petitioner concedes that he is not entitled to habeas corpus relief on Ground One, he has not withdrawn that claim and the Court will consider it.

Respondent is correct that Petitioner's federal sentence was not running during the time he was serving his Louisiana state sentence. A federal sentence begins to run when the service of that sentence commences, not when it is imposed. *Taylor v. Reno*, 164 F.3d 440, 445 (9th Cir. 1998) (citing 18 U.S.C. § 3585). On April 28, 1993, the District of Louisiana sentenced Petitioner to forty-six months' imprisonment, however, that sentence did not commence on that date. Rather, Petitioner was returned to the primary custody of the State of Louisiana,[5] was subsequently convicted on state charges and, on November 16, 1993, was sentenced to thirty-

---

[4] Respondents also argue that Petitioner is not entitled to credit on his federal sentence for the period from January 29, 1993, when he was brought into federal custody in Case No. CR-93-30009-01, until he was returned to the custody of the State of Louisiana on April 30, 1993. (Doc. 23 at 9.) The Court need not consider this issue because Petitioner did not raise this claim. However, the Court agrees that Plaintiff was "transferred pursuant to a *writ of habeas corpus ad prosequendum* [and was] considered to be on loan to the federal authorities so that the [State of Louisiana's] jurisdiction over [Petitioner] continue[d] uninterruptedly." *See Thomas v. Brewer*, 923 F.2d 1361 (9th Cir. 1991) (internal citation omitted).

[5] The State of Louisiana took primary custody of Petitioner when it arrested him and took custody of him on state charges before federal charges were filed. *See Taylor v. Reno*, 164 F.3d 440, 445 (9th Cir. 1998).

three years' imprisonment and remanded to the Louisiana Department of Corrections to serve that sentence.

Additionally, Petitioner's federal sentence presumptively runs consecutively to his state sentence. Title 18 U.S.C. § 3584(a) provides that, "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." *Id.* However, when the court imposes multiple terms on a defendant at the same time, or sentences a defendant who is already subject to an undischarged term of imprisonment, the court has the discretion to order that multiple terms of imprisonment run concurrently. *Id.* That discretion is limited in two ways. First, "concurrent sentences imposed by state judges are nothing more than recommendations to federal officials." *Taylor v. Sawyer*, 284 F.3d 1143, 1150 (9th Cir. 2002). Thus, the word "courts" in § 3584(a) refers only to federal courts. Second, the Ninth Circuit has held that federal courts "cannot order a sentence to run either concurrently or consecutively to a non-existent term." *Id.*; *see* 18 U.S.C. § 3584(a). "In other words, a federal court cannot order a sentence to be served concurrently with a sentence, including a state sentence, that has not yet been imposed." *Reynolds*, 603 F.3d at 1149.

Here, because the State of Louisiana had not yet tried, convicted, or sentenced Petitioner on the state charges, the Western District of Louisiana could not have ordered that Petitioner's federal sentence run concurrently with any sentence imposed in the state case. Accordingly, the District Court's judgment did not specify whether Petitioner's forty-six-month term of imprisonment should run consecutively or concurrently to any sentence that the Louisiana state court might later impose. Thus, Petitioner's 1993 federal sentence runs consecutively to Petitioner's later-imposed state sentence. *See* 18 U.S.C. § 3584(a). Indeed, consistent with § 3584(a), the judge who imposed the federal sentence later clarified that he intended for Petitioner's federal sentence to run consecutively to his state sentence. Therefore, Petitioner is not entitled to credit on his forty-six-month federal sentence for the period from April 28, 1993 until June 16, 2010.

### B. Ground Two — Estoppel and Waiver

In Ground Two, Petitioner contends that requiring him to serve his forty-six-month prison sentence after he was mistakenly released from federal custody violates the Due Process Clause based on theories of waiver or estoppel. Respondent opposes this assertion. "[U]nder common law, a convicted person erroneously at liberty must, when the error is discovered, serve the full sentence imposed." *United States v. Martinez*, 837 F.2d 861, 864 (9th Cir. 1988). However, courts now "consider the totality of the circumstances surrounding the delay in execution of the sentence" to determine if a due process violation has occurred. *Id.* If due process has been violated, "the convicted person is not required to serve the entire sentence imposed." *Id.* "[I]n cases involving delay in execution of sentence, federal courts have examined an alleged due process violation under the theories of waiver or estoppel." *Id.* (citing *Green v. Christiansen*, 732 F.2d 1397, 1399 (9th Cir. 1984)). The Court will consider whether estoppel or waiver precludes the government from requiring Petitioner to serve the forty-six-month term of imprisonment imposed by the Western District of Louisiana in 1993.

### 1. Equitable Estoppel

Generally, equitable estoppel is not an available defense against the government. *Schweiker v. Hansen*, 450 U.S. 785, 788-89 (1981). The Supreme Court has not explicitly endorsed estoppel against the government and has not set forth the circumstances under which estoppel might succeed against the government. *Id.* ("This Court has never decided what type of conduct by a Government employee will estop the Government from insisting upon compliance with valid regulations . . . ."). The Supreme Court has, however, suggested that "[a]ffirmative misconduct" may be sufficient for an estoppel claim. *Id.* Additionally, the Ninth Circuit has recognized that "estoppel is available as a defense against the government if the government's wrongful conduct threatens to work a serious injustice and if the public's interest would not be unduly damaged by the imposition of estoppel." *United States v. Lazy FC Ranch*, 481 F.2d 985, 989 (9th Cir. 1973) (citation omitted).

Estoppel requires that: "(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon or must act so that the party asserting the estoppel has a right to believe it is so intended; (3) the party asserting the estoppel must be ignorant of the facts; and (4) that party must rely on the former's conduct to his injury." *Martinez*, 837 F.3d at 865; *see also Johnson v. Williford*, 682 F.2d 868, 872 (9th Cir. 1982) (quoting *United States v. Georgia-Pacific Co.*, 421 F.2d 92, 96 (9th Cir. 1970)). As discussed below, even assuming that Petitioner established the threshold requirement for estoppel against the government, Petitioner does not satisfy the criteria for imposing estoppel in this case.

Here, Petitioner knew that he had not served his forty-six-month prison sentence that the Western District of Louisiana imposed in 1993. Indeed, while serving his state court sentence, Petitioner requested that the BOP consider a retroactive designation so that he could receive credit on his federal sentence. (Respondent's Ex. 2, attachment 11.) After receiving confirmation that the sentencing judge intended for Petitioner's federal sentence to run consecutively to his state sentence, the BOP denied Petitioner's request. *See Reynolds v. Thomas*, 603 F.3d 1144, 1151 (9th Cir. 2010) (upholding BOP's authority to deny prisoner's request that his federal sentence run concurrently with his state sentence, when no federal court order designated that the sentences should run concurrently.) Thus, Petitioner knew that his federal sentence was not running while he was serving his state sentence.

Petitioner alleges that during his June 16, 2010 initial appearance in the Western District of Louisiana on the petition to revoke supervised release, which had been filed in the Central District of California, the judge stated that Petitioner "was through with all of his time in Louisiana," in reference to Petitioner's forty-six-month federal sentence. (Doc. 24 at 4-5.) In support of his assertion, Petitioner cites the June 16, 2010 minute entry. (*Id.*, Ex. A.) That minute entry does not include any statements from the court, and only indicates that Petitioner was before the court for an initial appearance on an allegation that he violated his supervised release in the Central District of California. (*Id.*; doc. 23-5 at 85.) The record does not contain

any evidence indicating that the judge suggested that Petitioner was released from federal custody or that he had served his forty-six-month sentence.

After the June 16, 2010 initial appearance, Petitioner was transferred to the Central District of California for a revocation hearing. The Central District of California found that Petitioner had violated his supervised release and sentenced him to four months' imprisonment. After Petitioner served that sentence, BOP released him from custody on October 27, 2010. Shortly thereafter, BOP realized Petitioner had an outstanding federal sentence from the Western District of Louisiana, and that court issued a warrant for his arrest on November 2, 2010. (Doc. 23-5 at 120.) Petitioner was arrested on November 15, 2010 and was remanded to the BOP to serve his forty-six-month sentence imposed by the Western District of Louisiana. (Doc. 23-5 at 121.)

These facts do not warrant estopping the government from requiring Petitioner to serve his forty-six-month term of imprisonment. The BOP overlooked Petitioner's unserved federal sentence and mistakenly released him from custody. The BOP quickly discovered its mistake and federal authorities arrested Petitioner less than three weeks after his mistaken release. The government did not take any affirmative action that was so misleading that it should be estopped from requiring Petitioner to serve his federal sentence. *See Green*, 732 F.2d at 1399 (finding that a "ministerial mistake does not necessarily excuse [petitioner] from serving the rest of his sentence."); *cf. Johnson*, 682 F.2d at 872-73 (holding that the government was estopped from enforcing non-parolability provision of a statute when prisoner had been led to believe, through eight successive administrative reviews, that he would be eligible for parole when he was released). While the government's actions in this case may have been negligent, they do not amount to affirmative misconduct. *See Jaa v. United States I.N.S.*, 779 F.2d 569, 572 (9th Cir. 1986) ("Affirmative misconduct must be more than negligence . . . .").

Additionally, although Petitioner relied on the government's conduct in releasing him, reunited with his family, and obtained work as a mechanic and motel clerk while he was released, he has not shown that he suffered the requisite injury considering the short duration of

his release and the nature of the work he obtained. *See Green*, 732 F.2d at 1398-99 (finding that estoppel was not warranted when petitioner had been released for two-and-one-half-years based on the inadvertent failure of U.S. Marshals to place a detainer on him while he was incarcerated in the California Department of Corrections.); *cf. Johnson*, 682 F.2d at 873 (finding estoppel appropriate when, during fifteen months of parole release petitioner had "reunited with his family and left the safe haven of steady employment as a fruit packer in order to start and operate his own fruit business. By the time of his arrest, he had hired five employees, was solely responsible for the business banking accounts, and had been extended credit by local businesses."). Here, the government's inadvertent release of Petitioner "did not so mislead [him] that it would be improper to charge him with constructive knowledge that he still had time to serve." *See Id.* Petitioner, therefore, has not established the elements of estoppel.

### 2. Waiver

Petitioner also argues that the government has waived its right to require him to serve his forty-six-month term of imprisonment. Waiver can only be found when the government's "actions are so affirmatively improper or grossly negligent that it would be unequivocally inconsistent with 'fundamental principles of liberty and justice' to require a legal sentence to be served in its aftermath." *Green*, 732 F.2d at 1399. Here, Petitioner's mistaken release was based on a ministerial mistake — the BOP's miscalculation of Petitioner's release date based on its failure to consider Petitioner's unserved federal sentence imposed by the Western District of Louisiana. In similar circumstances, the Ninth Circuit held that this sort of mistake does not rise to the level of misconduct and does not constitute a waiver. *See Green*, 732 F.2d at 1298. Like this case, the petitioner in *Green* sought habeas corpus relief arguing that the government had waived, or was estopped from, asserting any right to incarcerate him after his mistaken release. The district court rejected Green's claim finding "that the inadvertence of a marshal in failing to place a detainer on [petitioner] [does not] meet[] the requisite standard of misconduct; the omission amounts to mere negligence at worst." *Green*, 732 F.2d at 1399. "It therefore does not

constitute a waiver." *Id.* Similarly, in this case, the government's actions in releasing Petitioner may have been negligent, but were not misconduct resulting in a waiver.

### C. Ground Three — Delay in Executing Federal Sentence

In Ground Three, Petitioner argues that the delay in executing his 1993 federal sentence from the Western District of Louisiana violates the Due Process Clause. Petitioner asserts that the "government's lack of interest in the execution of petitioner['s] sentence for 19 years was essentially a pardon or commutation of [that] sentence." (Doc. 16 at 10.) As discussed below, Petitioner is not entitled to relief on this claim.

During the sentencing hearing, the Louisiana District Court stated that Petitioner was "now in federal custody." Petitioner argues from this statement that his federal sentence should have commenced immediately. That statement, however, did not commence Petitioner's federal sentence. A federal sentence does not commence on the date it is imposed, but rather it commences "on the date the defendant is received in custody awaiting transportation to, or arrives . . . at, the official detention facility at which the sentence is to be served," 18 U.S.C. § 3585. Any statement by the court prescribing "when a sentence shall begin to run, [] is surplusage and has no effect; it cannot displace an action of Congress." *Scott v. United States*, 434 F.2d 11, 21 (5th Cir. 1970). Thus, the district court in this case lacked authority to commence Petitioner's federal sentence, "regardless of what the court said." *See Taylor*, 164 F.3d at 446. Petitioner also asserts that the U.S. Marshal violated the district court's commitment order, which he construes as requiring the U.S. Marshal to immediately deliver him to the BOP to begin serving his federal sentence. This claim also lacks merit because the district court lacked authority to order the commencement of Petitioner's sentence. *See id.*

As previously noted, the judgment entered in the Western District of Louisiana did not, and could not properly, indicate whether Petitioner's federal sentence should run concurrently or consecutively to any sentence that the state court had yet to impose. *See* 18 U.S.C. § 3584(a). Additionally, § 3584(a) provides that multiple terms of state and federal imprisonment run consecutively absent a court order that the sentences run concurrently. *Id.* Thus, Petitioner's

- 12 -

federal sentence properly runs consecutively to his state sentence.  By requiring Petitioner to serve his outstanding federal sentence, BOP is enforcing the plain terms of § 3584(a).

Therefore, the commencement of Petitioner's federal sentence after the completion of his state sentence, and after he had spent a few weeks in the community following his mistaken release from federal custody, does not give rise to a due process violation. *See Martinez*, 837 F.2d at 864-65 (finding that unexplained seven-and-one-half year delay in ordering execution of a federal sentence did not violate the due process clause).  The execution of Petitioner's sentence comports with the applicable federal law and the delay in the commencement of his 1993 federal sentence from the Western District of Louisiana is not so fundamentally unfair as to give rise to a due process violation. *See Taylor*, 164 F.3d at 446 (rejecting petitioner's claim that district court's statements that petitioner should get credit against his federal sentence for time spent in state custody gave rise to a due process violation when district court acknowledged that it lacked authority to commence federal sentence "as long as [petitioner was] in state custody."); *Piper v. Estelle*, 485 F.2d 245 (5th Cir. 1973) (*per curiam*) (holding that "official conduct that merely evidences a lack of eager pursuit or even arguable lack of interest" is not sufficient to violate due process). *But cf. United States v. Merritt*, 478 F. Supp. 804, 807-08 (D.D.C. 1979) (finding that "fundamental principles of liberty and justice" would be violated if a petitioner were required to serve the remainder of his sentence after he had been released prematurely from custody despite having inquired about the status of an outstanding detainer and, during his three years on release, had successfully adjusted to society, including getting married and having one child and adopting another, becoming an active member of a church, and becoming a part-owner and vice-president of a construction company).

**D. Ground Four — Breach of Contract**

In Ground Four, Petitioner argues that BOP's act of incarcerating him after his release from custody pursuant to a "Release Authorization" is a breach of contract. (Doc. 16 at 11.) In support of that assertion, Petitioner cites civil cases construing release agreements. (Doc. 24 at 10 (citing, *inter alia*, *Skilstaf Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1018 n.10 (9th Cir.

- 13 -

2011); *Marder v. Lopez*, 450 F.3d 445, 449 (9th Cir. 2006) (discussing provision in settlement agreement releasing parties from civil liability); *Marder v. Lopez*, 450 F.3d 445, 449 (9th Cir. 2006) (interpreting a "general release" discharging movie company from claims arising out of creation of a film based on a dancer's life))). The agreements at issue in those cases, however, released certain parties from possible civil liability. In contrast, the document that the BOP issued in this case, a Release Authorization, physically released Petitioner from BOP's custody.[6] Petitioner has not cited any authority suggesting that the Release Authorization should be construed as a contract.

**III. Conclusion**

For the foregoing reasons, the Amended Petition for Writ of Habeas Corpus should be denied.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's Amended Petition for Writ of Habeas Corpus, Doc. 16, be **DENIED.**

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. 4(a)(1), should not be filed until entry of the District Court's judgment. The parties have fourteen days from the date of service of a copy of this Report and Recommendation within which to file specific written

---

[6] The Release Authorization provides: "CERTIFICATION. I certify that this release is in accordance with applicable and controlling rules, regulations and statutory provisions. I have personally reviewed this inmate's Judgment and Commitment File and determined that there is no information that would prevent release by the method stated above . . . All Judgment and Commitment Orders, U.S. Parole Commission Warrants, Notice of Actions, Good Time Documents, and all detainer information have been personally reviewed by me [Art Moore, SCSS]." (Doc. 16 at 20.)

objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6 and 72. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. Rule 72.

DATED this 30th day of January, 2013.

*Bridget S. Bade*
Bridget S. Bade
United States Magistrate Judge